No. 17          March 24, 2016          807

## IN THE SUPREME COURT OF THE STATE OF OREGON

Heather CONROY;
Margaret ("Maggie") Neel, an individual elector;
Mike Forest, an individual elector;
Hanna Vaandering; Trent Lutz;
and Richard Schwarz,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S063735)

En Banc

On petition to review ballot title filed December 15, 2015; considered and under advisement February 9, 2016.

Steven C. Berman, Stoll Stoll Berne Lokting & Shlachter, P.C., Portland, filed the petition and reply for petitioner Heather Conroy.

Nathan R. Rietmann, Salem, filed the petition and reply for petitioners Margaret ("Maggie") Neel and Mike Forest.

Aruna A. Masih, Bennett, Hartman, Morris & Kaplan LLP, Portland, filed the petition and reply for petitioners Hanna Vaandering, Trent Lutz, and Richard Schwarz.

Shannon T. Reel, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

WALTERS, J.

The ballot title is referred to the Attorney General for modification.

**WALTERS, J.**

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 62 (2016) (IP 62), arguing that the ballot title does not satisfy the requirements of ORS 250.035. We review a certified ballot title to determine whether it substantially complies with those statutory requirements. *See* ORS 250.085(5) (stating standard of review). For the reasons that follow, we refer the ballot title to the Attorney General for modification.

IP 62 applies to public employees (employees) and public employee labor organizations (unions). If adopted by the voters, IP 62 would amend several provisions of the Oregon Public Employee Collective Bargaining Act (PECBA). The Attorney General certified the following ballot title for IP 62:

"**Public employee union may require dues/fees only for limited representation/bargaining activities; authorizes lawsuits**

"**Result of 'Yes' Vote**: 'Yes' vote prohibits public employee union from requiring dues/fees for union activities unrelated to limited representation/bargaining; employee may authorize additional payments. Authorizes lawsuits.

"**Result of 'No' Vote**:  'No' vote retains ability of public employee unions to require dues/fees for all union representation/bargaining activities, require member dues for other union activities.

"**Summary**:  Currently, public employees in a bargaining unit may be represented by a union. Union may require dues from its members to fund expenditures related to all bargaining/representation and other union activities. Collective bargaining agreements can require represented nonmembers to pay fees, but nonmembers cannot be required to pay fees for union activities unrelated to bargaining/representation. Measure prohibits requiring any dues/fees that fund activities other than union bargaining/representation concerning 'employment relations' (defined). 'Employment relations' includes all subjects on which unions, employers must bargain, but not all subjects on which they are allowed to bargain. Measure permits

union to separately collect itemized payments for other representation/bargaining activities, and other union activities from employee who authorizes additional amounts. Authorizes enforcement lawsuits. Other provisions."

Three sets of petitioners challenge the caption, result statements, and summary of the certified ballot title. First, petitioners Vaandering, Lutz, and Schwarz assert that the ballot title fails to adequately describe the changes that the measure makes to the terms of union membership. Petitioners Neel and Forest challenge the ballot title on similar grounds. Second, petitioners Vaandering, Lutz, and Schwarz assert that the ballot title fails to disclose that IP 62 would permit employees to receive the benefit of union representation without paying all the costs of that representation. Petitioner Conroy joins in that challenge, while petitioners Neel and Forest take the opposing view. Third, petitioners Neel and Forest object to the ballot title because, in their view, it wrongly uses the phrase "limited representation/bargaining activities," making the caption confusing, misleading, and inaccurate. Finally, petitioners Neel and Forest contend that the ballot title summary fails to inform voters of Oregon's system of exclusive representation.[1]

We begin with the first of those challenges and the requirements for the caption. As we said in *Towers v. Rosenblum*, 354 Or 125, 129, 310 P3d 1136 (2013):

"ORS 250.035(2)(a) requires that a ballot title for a proposed state measure contain a caption of not more than 15 words that reasonably identifies the 'subject matter' of the proposed measure. The caption is the 'headline' of the ballot title; it 'provides the context for the reader's consideration of the other information in the ballot title' and must describe the proposed measure's subject matter accurately. *Greene v. Kulongoski,* 322 Or 169, 175, 903 P2d 366 (1995). For the purposes of this court's review, the 'subject matter' of a ballot title is 'the "actual major effect" of a measure or, if the measure has more than one major effect, all such effects (to the limit of the available words).'" *Whitsett v. Kroger,* 348 Or 243, 247, 230 P3d 545 (2010)."

---

[1] Petitioners also advance additional objections, which we reject without discussion.

And, as we said in *Kain/Waller v. Myers,* 337 Or 36, 41, 93 P3d 62 (2004):

> "To determine the subject matter of a proposed measure, we first examine its words and the changes, if any, that the proposed measure would enact in the context of existing law. We then examine the words of the caption to determine whether they reasonably identify the proposed measure's subject matter. *See Phillips v. Myers*, 325 Or 221, 225-26, 936 P2d 964 (1997) (illustrating principle)."

Thus, the first step in our analysis is to determine the changes, if any, that IP 62 would make to PECBA. As currently written, PECBA does not set the terms and conditions of union membership, nor does it prescribe or limit the amounts that unions may charge members for representation, collective bargaining, or other union activities. Therefore, a union may charge dues that enable it to defray the cost of political and ideological activity and bargaining on permissive as well as mandatory subjects of bargaining. PECBA does not require all members of a bargaining unit to join a union, but it nevertheless requires the union to represent all bargaining unit employees, including nonmembers. ORS 243.666; *Sizemore/Terhune v. Myers*, 342 Or 578, 584, 157 P3d 188 (2007). Because nonmembers share in the benefits of union representation, PECBA permits unions to negotiate "fair-share agreements" with public employers. ORS 243.650(10). Fair-share agreements may require nonmembers to make "payment-in-lieu-of-dues." *Id*.; ORS 243.672(1)(c); *Novick/Bosak v. Myers*, 333 Or 18, 26, 36 P3d 464 (2001). "Payment-in-lieu-of dues" is "an assessment to defray the cost for services by the exclusive representative in negotiations and contract administration." ORS 243.650(18).

Under the First Amendment to the United States Constitution, payment-in-lieu-of-dues cannot defray union costs that are not germane to, or supportive of, collective bargaining and contract enforcement. *Teachers v. Hudson,* 475 US 292, 305-07, 106 S Ct 1066 (1986). Thus, such payments cannot defray the costs of a union's political or ideological activity. *Abood v. Detroit Board of Education,* 431 US 209, 235, 97 S Ct 1782 (1977). Payment-in-lieu-of-dues may, however, defray expenses beyond those incurred in bargaining on mandatory subjects of bargaining. *Compare* ORS

243.650(18) (defining "payment-in-lieu-of-dues") *with* ORS 243.650(7) (defining "employment relations" and setting out mandatory and permissive subjects of bargaining).

As noted, petitioners Vaandering, Lutz, and Schwarz contend that IP 62 makes significant changes to that statutory scheme. The first challenge that they assert is that IP 62 changes how unions conduct their internal affairs and design their dues structures, and that the ballot title caption must describe those changes. Petitioners Neel and Forest also contend that one of the major effects of IP 62 is to prohibit unions from "requiring employees to pay dues *as a condition of membership* that are used for political, ideological, and other non-collective bargaining purposes." (Emphasis in original.) Petitioners Neel and Forest point out that, unlike the draft ballot title that previously circulated for public comment, the certified ballot title removes the word "member" from the caption. That is wrong, those petitioners assert, because the subject matter of IP 62 is the "dues" that "members" are required to pay to join a union. IP 62, they explain, is not a measure about nonmembers.

The Attorney General does not dispute that IP 62 makes changes in the terms of union membership and that those changes are one of the subjects of IP 62. Instead, she argues that the certified ballot title adequately captures that subject by using the word "require" in the phrase "may *require* dues/fees only for limited representation/bargaining activities."

That argument misapprehends both the caption's purpose—to describe the *changes* that the measure would make to existing law—and the significance of the changes that IP 62 would make. Currently, unions set their own membership terms and dues structures. There are constitutional and statutory limits on amounts that nonmembers may be required to pay for union activities, but there are no such limits on the dues that members may be required to pay. IP 62 would flip that arrangement, and, instead of imposing limits on payments by nonmembers, would impose limits on dues paid by union members. IP 62 § 3(2)(a) and (b); § 5(1). Instead of permitting unions to charge dues to defray any and all union expenses, the measure would limit

dues to an amount necessary and reasonable to defray the costs of bargaining on matters concerning "employment relations." IP 62 § (3)(2)(b). The measure would permit a union to collect additional revenue to defray other expenses only by obtaining an employee's affirmative written consent to make such payments on a form prescribed by statute. IP 62 § 6(1)(c); § 6(3). The certified caption does not inform voters that, under IP 62, a union would no longer have authority to set its own membership requirements and to defray its costs through its dues structure. The caption's use of the word "required" does not describe those changes and, therefore, does not substantially comply with ORS 250.035.

Petitioners also object to the "yes" and "no" result statements on that same basis, and the Attorney General responds that the result statements are sufficient for the same reasons that the caption is sufficient. For the reasons stated, we agree with petitioners. IP 62 makes a significant change in the terms of union membership and the result statements should address that change.

We turn next to the second challenge asserted by petitioners Vaandering, Lutz, and Schwarz, a challenge in which petitioner Conroy joins. Those four petitioners contend that, because the dues limitation in IP 62 precludes unions from recovering, in dues, the expenses of permissive bargaining, and because IP 62 does not require employees to pay those costs, IP 62 has a "free-rider" effect that must be described in the caption, the result statements, and the summary. Petitioners reason that, under IP 62, a union would be precluded from including in its dues structure not only the costs of its political or ideological activity but also costs not necessarily or reasonably incurred for the purpose of representation and collective bargaining on matters concerning "employment relations." IP 62 § 3(2)(b). The term "employment relations" is a term that includes certain mandatory, but not other permissive, subjects of bargaining. ORS 243.650(7). Therefore, petitioners reason, employees would not be required to pay, as dues, the costs of union bargaining on permissive subjects and so they would receive the benefit of such bargaining without paying for it. In addition, petitioners contend, IP 62 would permit union members to

cancel membership and discontinue paying dues at any time. IP 62 § 3(2)(c). Therefore, they reason, employees who exercise that right also would obtain benefits that the union had previously negotiated without being required to pay the costs of those efforts. Petitioners contend that those "free-rider" effects must be described.

The Attorney General agrees that IP 62 would limit dues to amounts necessary to defray the cost of bargaining on mandatory subjects and that the ballot title must so inform voters. Accordingly, the certified caption and result statements use the phrase "limited representation/bargaining activities," and the summary explains that IP 62 prohibits requiring any dues that fund "activities other than union bargaining/representation concerning 'employment relations' (defined)" and that "'[e]mployment relations' includes all subjects on which unions, employers must bargain, but not all subjects on which they are allowed to bargain." The Attorney General also acknowledges that the effect of that limitation is that employees who pay only required baseline dues may obtain contractual benefits for which unions bargain without being required to pay the cost of obtaining those benefits. However, the Attorney General contends, IP 62 would not necessarily have that effect. The Attorney General argues that a union's duty to represent bargaining unit members is co-extensive with the dues limitation and does not require a union to bargain about permissive subjects. *Compare* ORS 243.666(1) (making union the exclusive representative of employees with respect to "employment relations") *with* IP 62 § 3(2)(b) (limiting dues to costs of bargaining on "employment relations"). Therefore, the Attorney General reasons, a union is not required to engage in bargaining on permissive subjects, and whether employees will obtain benefits without paying for them is mere speculation.

With respect to the provisions of IP 62 permitting a union member to discontinue paying dues at any time, the Attorney General responds, "[I]t appears that collective bargaining agreements could still require nonmember employees to make payments reflecting all of the work that unions are legally required to perform for them." Even if union members discontinue dues payments, the Attorney General reasons, they may be required to make payment-in-lieu-of-dues

that will compensate the union for its legally required work. IP 62 would not, the Attorney General asserts, excuse a nonmember from making payments for such work.

Petitioners reply that IP 62 would supplant fair-share agreements and payment-in-lieu-of-dues by imposing limits on dues instead. And, even if not, petitioners argue, the measure would, as explained, still create free-riders. Neither member employees who pay baseline membership dues nor nonmember employees who make payment-in-lieu-of-dues would be required to pay the cost of a union's bargaining on permissive subjects. The only employees who would pay those costs would be those who make voluntary payments to the union. Others would obtain the benefit of bargaining on those subjects without paying for it. Thus, petitioners argue, even if fair-share agreements continue to be viable, IP 62 would have a free-rider effect.

In reviewing a ballot title, it is not our task to definitively interpret the proposed measure. *See* ORS 250.085(5) (providing that this court reviews ballot titles for substantial compliance with the requirements of ORS 250.035). Rather, our task is to ensure that the ballot title accurately informs voters about the subject and effect of the measure. When the legal effect of a measure is unclear, we will not speculate about it. *Pelikan/Tauman v. Myers*, 342 Or 383, 389, 153 P3d 117 (2007); *see also Wolf v. Myers*, 343 Or 494, 500, 173 P3d 812 (2007). Although we acknowledge that the extent to which IP 62 would permit free-riders is uncertain, we need not speculate to conclude that IP 62 limits the costs that a union can require employees to pay for union representation. Under IP 62, if a union were to bargain on permissive subjects and obtain contractual benefits, those benefits would be available to all bargaining unit members, but the union would be prohibited from recovering those expenses as required dues. An employee who paid only baseline union dues would obtain those contractual benefits for free. The same would be true for employees who made payment-in-lieu-of-dues, if such payments remained viable under the measure, an issue that we do not decide. The Attorney General may be correct that a union has no duty to bargain on permissive subjects, but a union also has no duty to bargain for any particular contractual benefit, whether

the subject is mandatory or permissive. However, when a union does bargain for a benefit that the union does obtain, that benefit must be made available to all employees in the bargaining unit, and a measure that precludes a union from requiring payment of the costs that the union incurs in bargaining for such a benefit creates a potential free-rider effect that must be disclosed to voters. *See Sizemore/Terhune*, 342 Or at 585 (so holding for measure that would permit non-members to receive representation services without sharing cost). We agree with petitioners Vaandering, Lutz, Schwarz, and Conroy that the ballot title for IP 62 must inform voters that, under that measure, employees need not share in a union's total representation costs. We also agree with those petitioners that neither the caption, the result statements, nor the summary adequately informs voters of that major effect and therefore each must be modified.

The next issue for our consideration is the challenge advanced by petitioners Neal and Forest that the Attorney General's use of the phrase "limited representation/ bargaining activities" is unclear. Petitioners argue that the phrase is not legally defined and is not used in general parlance, and that voters will not understand it. The Attorney General is apparently using that phrase to refer to the fact that the measure does not permit unions to include the costs of bargaining for political and ideological purposes and on permissive subjects in their dues structures. Although the summary includes a fuller discussion of those concepts and thereby clarifies the challenged phrase, petitioners contend that the caption and result statements do not meet statutory requirements. We understand petitioner's concerns, but we also are aware that it is difficult to explain complex concepts within the word limitations imposed by ORS 250.035(2)(a) and (b). In this instance, we agree with the Attorney General that the challenged phrase is not so unclear or misleading that it violates the requirements of ORS 250.035.

Finally, we consider the challenge of petitioners Neel and Forest directed to the ballot title summary. Petitioners note that the first sentence of the summary provides that "[c]urrently, public employees in a bargaining unit may be represented by a union." That is misleading, petitioners argue, because, although employees are not required to

form a union, a union which has been certified or recognized must represent all employees in the bargaining unit. ORS 243.666. Thus, employees within a bargaining unit must—not may—be represented by the union. We agree. The challenged phrase is incorrect, violates ORS 250.035, and must be modified.

The ballot title is referred to the Attorney General for modification.